**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **21-02843-jw**

**ORDER**

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/25/2022**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 02/25/2022

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Brenda Williams Saxon,<br><br>       Debtor. | C/A No. 21-02843-JW<br><br>Chapter 13 |

## ORDER DETERMINING STATUS OF REAL PROPERTY

This matter comes before the Court upon a Motion for Order Determining Status of Real Property ("Motion") filed by Maverick Project Group LLC ("Purchaser"). The Motion asks the Court to determine whether certain real property located at 233 McTeer Street, Hardeeville, South Carolina was sold at a state court foreclosure sale prior to Debtor Brenda Williams Saxon's filing of her Chapter 13 bankruptcy case on November 1, 2021, at 11:09:13 AM. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on arguments and evidence presented by the parties, the Court makes the following findings of facts and conclusions of law.

## FINDINGS OF FACT

On January 17, 2006, Brenda W. Saxon ("Debtor") and her spouse, Anthony L. Saxon, signed a promissory note as part of a home equity line of credit transaction ("Mortgage Loan") to secure a credit line up to $60,000.00 from American General Financial Services. To secure their repayment obligations, Debtor and her spouse also signed a mortgage. The mortgage encumbers Debtor's primary residence at 233 McTeer Street, Hardeeville, SC 29927 ("Property"), and was recorded within the land records for Jasper County, South Carolina in book 399 at page 257 on January 31, 2006.

Five years after securing the Mortgage Loan, Debtor's spouse passed away on March 19, 2011, and seven years later, Debtor defaulted on her repayment obligations by failing to pay the August 1, 2018, payment and subsequent payments when they became due. The holder ("Creditor") of the Mortgage Loan filed a foreclosure action against Debtor on January 14, 2019, with the Court of Common Pleas for Jasper County, South Carolina ("State Court"). During the foreclosure litigation, the foreclosure action was assigned to a Special Referee for adjudication pursuant to Rule 53 of the South Carolina Rules of Civil Procedure. Ultimately, Creditor secured an Order of Judgment of Foreclosure and Sale Decree ("Foreclosure Judgment"), which awarded a judgment of $85,917.35 to Creditor against Debtor for amounts due under the note, including attorney's fees and costs. Pursuant to S.C. Code Ann. § 29-3-650 and Rule 71(b) of the South Carolina Rules of Civil Procedure, the Foreclosure Judgment also scheduled a judicial sale of the Property for November 1, 2021, at 11:00 AM. The Court's records reflect that Debtor filed her Chapter 13 bankruptcy case at 11:09:13 AM on the same day as the sale of the Property.

According to the parties, there is no official record of the timing of events that occurred on the day of the foreclosure sale. There is no recording, transcript, clocked copy, receipt, Special Referee's affidavit or notes that indicate the exact time of the conclusion (or the "fall of the gavel") of the sale of Debtor's Property. No party disputes that until the foreclosure sale concluded, Debtor maintained legal title and an ownership interest in the Property. The Court is asked to determine the precise timing of the conclusion of the foreclosure sale in relation to Debtor's bankruptcy case filing at 11:09:13 AM as reflected in the Court's records based upon the recollections and impressions of Ramara Garrett, the representative of the Purchaser, and her telephone records.

Around 11:03 AM,[1] it appears that the Special Referee had begun the process of receiving bids for the first sale on his docket of an unrelated parcel of real property located on Mockingbird Street. At the conclusion of the first sale,[2] there was pause[3] in the proceedings so that the successful bidder could identify to whom he needed to provide his contact information and perform other administrative tasks associated with that sale. After the pause, the Special Referee began the sale of the Property by announcing the parties involved in the foreclosure action, case number, the foreclosure-judgment amount, description of the Property, the Property's tax identification number, and finally the Property's address.

It is undisputed that the bidding for the Property was contested among four parties, which included a representative of the Creditor from ERV Bidding ("ERV")[4] and Ramara Garrett. It is also undisputed, however, that there are no official state-court records created by the Special Referee documenting (a) the time that the judicial sale of the Property began; (b) the number of bids placed by each attendee at the sale or the length of time the bidding took; or (c) the time that the sale concluded upon the Special Referee's closing of bidding and announcement of the highest bid.[5]

During the sale of the Property, ERV initiated the bidding process by placing a credit bid of $2,500.[6] After a series of competitive bids, ERV, at some point, placed its last bid of $87,196.35

---

[1] This time was based upon the testimony of the Purchaser's agent regarding her time of arrival at the Special Referee's sale docket, there is no evidence documenting the precise time that the Special Referee began his sales docket for November 1, 2021.
[2] According to the testimony of the Purchaser's agent, this sale concluded sometime around 11:06 AM, but there is no evidence detailing the precise time the first sale concluded.
[3] There is no evidence detailing the length of this pause.
[4] The evidence reflects that Creditor retained ERV Bidding to attend the foreclosure sale on its behalf to place the Creditor's credit bid at the sale to ensure Creditor's recovery of the judgment balance for its mortgage loan.
[5] The conclusion of a judicial sale is generally recognized as "the fall of the gavel." *See In re Watts*, 273 B.R. 471, 474-75 (Bankr. D.S.C. 2000).
[6] The evidence indicates that Creditor's judgment balance was $87,196.35, and therefore, that judgment balance was likely Creditor's maximum bid.

on behalf of Creditor, which was equivalent to the balance of Creditor's foreclosure judgment. After ERV's bid, the next bid was for $89,000. Bidding continued in increments of $1,000 until the bidding reached $96,000. Thereafter, Ms. Garrett placed a bid of $100,000. In response to Ms. Garrett's bid, one of the other attendees placed a bid for $101,000. Ms. Garrett countered with a bid for $105,000, which was met by a higher bid of $106,000. Ms. Garrett then placed a bid for $110,000, which was met with a counter bid from another party of $111,000. Ms. Garrett responded with a bid of $115,000, which was countered by a bid of $116,000. In response, Ms. Garrett placed her final bid of $120,000. At that point, the other competing bidder at the sale stated that "she can have it." After hearing the attendee's comment and receiving no further bids, the Special Referee stated that the Property "was going once, going twice, and sold" for $120,000. There was no evidence introduced which established the exact time of the announcement by the Special Referee. Ms. Garrett, however, testified that "she felt certain" the announcement was before the stipulated time of the bankruptcy filing.

At the conclusion of the sale of the Property, the Purchaser remitted $7,500 in proceeds to the Special Referee to pay the deposit required for its bid. It also appears that at some point later that day, due to a telephone call from the Debtor's bankruptcy counsel, the Special Referee was advised of the bankruptcy filing at 11:09 AM. Ms. Garrett testified that the Special Referee then advised her of the bankruptcy filing that same day and told her to contact Creditor regarding the validity of the sale. On November 30, 2021, the Purchaser paid $113,517.32 to fully fund its final bid. Thereafter, the Special Referee executed a satisfaction of Creditor's mortgage noting satisfaction of Creditor's lien by foreclosure along with a deed that conveyed the Property to Purchaser. Despite the Special Referee's completion of the post-sale procedures, the critical question raised by the Purchaser's Motion is whether the sale of the Property concluded before

Debtor filed her Chapter 13 case; thereby terminating Debtor's interest in the Property prepetition and preventing the Property's inclusion in Debtor's bankruptcy estate.

## CONCLUSIONS OF LAW

Section 541(a)(1) of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" constitute property of the estate. 11 U.S.C. § 541(a); *In re Watts*, 273 B.R. 471, 474 (Bankr. D.S.C. 2000). As a matter of law, within this district, real property sold at a completed foreclosure sale before a debtor files a bankruptcy petition is not property of the debtor's bankruptcy estate because "a pre-petition foreclosure sale terminates all of a debtor's legal and equitable interests in the property." *Id.* at 474-75; *see also In re Morgan*, C/A No. 20-04434-HB, slip op. at *6 (Bankr. D.S.C. Apr. 14, 2021) (citing *In re Davis*, C/A No. 02-12431-W, slip op. at 2 (Bankr. D.S.C. Nov. 27, 2002)); *In re Madison*, C/A No. 10-05755-DD, slip op. at *5 (Bankr. D.S.C. Nov. 3, 2010) ("Where debtor has been divested of all but bare legal title through a foreclosure sale, cause exists to grant relief from the automatic stay to permit Creditor to conclude any act remaining in the sales process and take possession of the property.").[7]

In this case, the Purchaser as movant seeks a determination that the State Court foreclosure sale concluded prior to Debtor's bankruptcy filing so as to terminate Debtor's interest in the Property and avoid the effect of the automatic stay pursuant to 11 U.S.C. § 362.[8] The Motion is

---

[7] The referenced orders addressing whether conclusion of a foreclosure sale prevented Debtor's real property from being a part of a debtor's bankruptcy estate arose from motions for relief from stay filed by the mortgage creditor. *See, e.g., In re Morgan*, C/A No. 20-04434-HB, slip op. at *1; *In re Madison*, C/A No. 10-05755-DD, slip op. at *1; *In re Riverfront Properties, LLC*, 405 B.R. 570, 571 (Bankr. D.S.C. 2009); *In re Watts*, 273 B.R. at 472; *In re Holmes*, Civ. Act. No. 99-08796-B, 1999 WL 33486090, at *1 (Bankr. D.S.C. Nov. 19, 1999). In that context, the creditor has the burden of proof to show that the foreclosure sale concluded before the debtor filed a bankruptcy petition. *See In re Morgan,* C/A No. 20-04434-HB, slip op. at *4 ("The party requesting relief has the initial burden of proving cause exists for relief from the automatic stay, including lack of adequate protection, and lack of equity in the property.") (citing *In re Toomer*, C/A No. 10-07273-JW, 2011 WL 8899488, at *2 (Bankr. D.S.C. Oct. 5, 2011)).

[8] As such, the Purchaser points to the conclusion of the foreclosure sale as the event which changed Debtor's prepetition interests in the Property.

substantively like a motion seeking declaratory judgment, and in such instances, this Court has recognized that the party seeking declaratory judgment bears the burden of proof. *See In re Hamrick*, 627 B.R. 619, 629 (Bankr. D.S.C. 2021) (citing *Willcox v. Stroup,* 629 B.R. 554 (Bankr. D.S.C. 2005), *rev'd on other grounds,* 358 B.R. 826 (D.S.C. 2006)). Therefore, as the moving party, the Purchaser bears the burden of proof.

In the Motion, the Purchaser alleges that the Special Referee concluded the foreclosure sale of the Property sometime between 11:07 AM and 11:08 AM on November 1, 2021. With the Debtor's bankruptcy filing occurring at 11:09:13 AM on the same day as the sale—which is established by this Court's records—the time in dispute is between 133 and 73 seconds. In this case, the Purchaser must establish as a fact that the foreclosure sale ended before the bankruptcy filing to carry its burden of proof.[9] In light of the weight and nature of the evidence presented, the Court as the trier of fact does not believe that the Purchaser's evidence or argument met its burden. *See Stiers v. Martin*, 264 F.2d 795, 797 (4th Cir. 1959) ("The District Court, sitting without a jury as the trier of facts, determines the credibility of all the witnesses and the weight to be accorded their testimony."); *Safeway Trails v. Allentown & Reading Transit Co.*, 185 F.2d 918, 920 (4th Cir. 1950) (recognizing that question of credibility of witnesses is peculiarly within the province of the trial judge who sees and hears the witnesses); *United States v. Whaley*, Cr/A No. 5:12-cr-00810-JMC-1, 2019 WL 3288828, *8 (D.S.C. July 22, 2019) (citing *Safeway Trails v. Allentown & Reading Transit Co.* 185 F.2d 918, 920 (4th Cir. 1950) to conclude that district court is responsible for determining credibility of witnesses).

---

[9] The Court recognizes that in most other cases, less precision is required to determine the conclusion of a foreclosure sale and filing of bankruptcy because the time between each event is greater. For instance, where a foreclosure sale concludes in the morning, and a bankruptcy is filed in the late afternoon, the need for establishing the precise moment in time a foreclosure sale concludes is lessened.

The Court notes that there is no official record from the Special Referee or State Court which firmly establishes the precise time the sale of the Property concluded on November 1, 2021. If such a record had been established, then this matter could have been determined by reference to that official record, or short of that, some other contemporaneously and independently generated record noting the conclusion of the sale could be used to determine the precise time the foreclosure sale of the Property ended.[10] Instead of an official record from the Special Referee or the State Court, the only evidence presented at the hearing on the Purchaser's Motion came from Purchaser's representative, Ms. Garrett,[11] who provided testimony based on her observations and general impressions of what transpired at the sale of the Property. Despite her conclusion that the sale concluded before the time of the bankruptcy filing, there was no act, note or reference that convinces the Court of the precise time the foreclosure sale ended.

Ms. Garrett's lone, uncorroborated testimony is not enough to satisfy the Purchaser's burden of proof to demonstrate that the foreclosure sale concluded before Debtor filed her bankruptcy case. First, Ms. Garrett's testimony is problematic because she provided no evidence reflecting that she actually determined or recorded the precise time that the sale of the Property ended. Indeed, Ms. Garrett even admitted that she did not check the time to identify the precise moment the foreclosure sale concluded. In light of the fact that the sale of the Property involved four different bidders engaged in competitive bidding, it is reasonable to infer from the evidence that the sale concluded after Debtor filed her bankruptcy case in the absence of any more exact

---

[10] The Court recognizes that creating a record of the precise moment in time that a foreclosure sale concludes is not a mandatory procedure or general practice among the State Court officers presiding over foreclosure sales. Some county courts and judicial officers may have the resources to have a court reporter or even a recording of sale proceedings to document the time a sale begins and ends, while others may not. Nevertheless, given the importance of the time that a foreclosure sale concludes relative to the filing of a bankruptcy case, creditors, their counsel, and bidders should work with court officers presiding over foreclosure sales to document the precise time a sale concludes to address the possibility of a debtor filing bankruptcy moments before a sale concludes.
[11] According to Ms. Garrett's testimony, the Purchaser is owned by an entity named "Waverly Media", and Ms. Garrett's mother is the managing member of both Purchaser and Waverly Media.

evidence detailing the precise time that the sale concluded. Ms. Garrett's testimony is largely comprised of assertions that the sale of the Property began and ended around specified times reflected in phone records, which were submitted into evidence but, as to their contents, lacked specificity or corroborating proof. The materials admitted into evidence failed to detail the precise time the foreclosure sale of the Property began and concluded. Given that ERV, Ms. Garrett, and two others participated in offering a series of competitive bids for the Property during the foreclosure sale, it is more reasonable to infer that the sale took longer than thought by Ms. Garrett and continued past the time of the bankruptcy filing.

Next, Ms. Garrett's testimony is also problematic because it gives the appearance of self-interested bias. Ms. Garrett's testified that her mother serves as the managing partner for Purchaser, which is a family run business that routinely buys distressed properties and sells them for profit, and its parent company, Waverly Media. Under these circumstances, it is apparent that Ms. Garrett and Purchaser have a pecuniary interest in the results of the Motion. She further testified that Purchaser would suffer a serious economic loss[12] if the Court concludes that the foreclosure sale did not conclude before Debtor filed her bankruptcy case. Further, Ms. Garrett testified that Purchaser apparently consulted with and thereafter relied on Creditor's opinion that the foreclosure sale concluded before Debtor filed her bankruptcy case rather than having an established record documenting the precise time the sale ended.

Recognizing the slightest of margins in time between the filing of the bankruptcy case and the conclusion of the foreclosure sale, which would terminate Debtor's otherwise ongoing interests in the Property, there must be a credible and reliable record of the facts that establish the exact

---

[12] While the Court understands the economic loss and inconvenience suffered by Purchaser if its purchase of the Property is voided under Bankruptcy Law, such an expense is no different from any other operational costs associated with Purchaser's speculative investments in foreclosed properties and pales in comparative prejudice to Debtor's potential loss of her residence.

time the sale of the Property concluded. Here, the lack of corroborating evidence to support the Purchaser's position is critical. First, the Special Referee did not testify or even present an affidavit attesting that the foreclosure sale concluded before the time of Debtor's bankruptcy filing. Furthermore, despite knowing that on the day of the sale of the Property, a simultaneous bankruptcy filing, which would void the sale, had occurred, the Special Referee apparently made no more contemporaneous record or recollective notes. According to Ms. Garrett's testimony, the Referee indicated that he discarded any notes of the proceedings. Under such circumstance, this fact further casts a doubt on the issue of timing of the foreclosure sale in relation of Debtor's bankruptcy filing.

Four separate parties appeared at the foreclosure sale of the Property and placed bids for it. But none of these other parties appeared at the hearing to corroborate Ms. Garrett's view of events. Notably absent from the hearing on the Motion was the ERV bidding representative for the Creditor to provide corroborating testimony as to the precise time that the foreclosure sale concluded.[13] Purchaser offered no evidence from any other bidder who was present at the sale.

The facts of this dispute present an incredibly close factual call based on what transpired seconds before Debtor filed her bankruptcy case at 11:09:13 AM. Even accepting certain times specified by Ms. Garrett, the processing of the prior sale for Mockingbird Street, the introduction of the sale of the Property, and the number of competitive bids indicates a lapse of time more than a few minutes, which makes it appear more likely that Debtor's bankruptcy filing occurred before the sale of the Property concluded. Because this Court's record establishing the timing of Debtor's bankruptcy filing is certain, Purchaser needed precise and corroborating, credible evidence to

---

[13] ERV's identification of the precise time that the sale concluded in ERV's internal report on sale to Creditor's foreclosure counsel would have been helpful to the Purchaser, but such a record was never produced.

establish that the foreclosure sale of the Property concluded before Debtor's bankruptcy filing. The evidence presented at the hearing for the Motion by Purchaser falls short.

## CONCLUSION

Considering the foregoing, the Court concludes that Debtor filed her Chapter 13 case before the foreclosure sale of the Property concluded on November 1, 2021.

To this end, it **IS HEREBY ORDERED** that the foreclosure sale of the Property occurring on November 1, 2021, was post-petition and therefore void under 11 U.S.C. §§ 362(a) & 541.

Because the Court concludes that the foreclosure sale is void as a matter of law under the Bankruptcy Code, Creditor or its designee should return all proceeds paid by the Purchaser to the Purchaser or its designee, and Creditor must take all steps to unwind the foreclosure sale and re-establish title to the Property in Debtor's name.[14]

Finding the Property is property of the estate in this case, Debtor may provide for the treatment of Creditor's claim in her plan to the extent permitted by the Bankruptcy Code.

**AND IT IS SO ORDERED.**

---

[14] If necessary to re-establish title to the Property in Debtor's name, Creditor **IS HEREBY AUTHORIZED** to record this Order in the land records for the State Court to document that the Release of Lien by Mortgage Foreclosure and Foreclosure Deed executed by the Special Referee for Jasper County, South Carolina are void under the Bankruptcy Code.